**VECINOS de BARRIO UNO,
et al., Plaintiffs,**

v.

**CITY OF HOLYOKE, et al., Defendants**

**Civ. A. No. 92–30052–MAP.**

United States District Court,
D. Massachusetts.

April 27, 1995.

---

**10**

Daniel J. Gleason, Julie A. Trachten, Nutter, McClennen & Fish, Boston, MA, David P. Hoose, Alan M. Katz, Katz, Sasson & Hoose, Springfield, MA, William Newman, Lesser, Newman, Souweine & Nasser, Northampton, MA, Ozell Hudson, Jr., Lawyers' Committee for Civ. Rights, and Alan J. Rom, Law Office of Sherwin L. Kantrovitz, P.C., Boston, MA, for plaintiffs.

Edward R. Mitnick, Asst. City Sol., Kenneth J. Cote, Jr., City of Holyoke Law Dept., Holyoke, MA, and Steven P. Perlmutter, Robinson & Cole, Boston, MA, for defendants.

Thomas E. Kanwit, U.S. Attorney's Office, Boston, MA, for movant.

### MEMORANDUM REGARDING THE REMEDIAL ORDER OF THE COURT

PONSOR, District Judge.

### I. INTRODUCTION

This court has previously found that the system of election for the Holyoke City Council violates the Voting Rights Act as amended in 1982, 42 U.S.C. § 1973. This memorandum will address the appropriate remedy.

■ The court will enjoin the defendants from conducting any City Council elections under the current electoral structure comprised of eight at-large seats and seven ward seats. The City will be ordered to conduct all future elections for City Council under a structure comprised of seven Council seats elected from each of the seven wards currently in place and two Council seats to be elected at-large. This is the system now used for elections to the City's School Committee; it is the least intrusive, effective remedy for the violation of the Act. The court's reasoning is set forth below.

### II. REMEDIAL STANDARD OF THE VOTING RIGHTS ACT

Several principles of voting rights jurisprudence have been applied in fashioning a remedy tailored to the circumstances of this case.

The first is the "basic principle of equity that the remedy fashioned must be commensurate with the right that has been violated ... so that [the relief afforded] completely remedies the prior dilution of minority voting strength." S.Rep. No. 417, 97th Cong., 2d Sess. 31, U.S.Code Cong. & Admin.News 1982, pp. 177, 208 (accompanying the Voting Rights Act Amendments of 1982, 42 U.S.C. § 1973); see Brown v. Board of Com'rs of Chattanooga, Tenn., 722 F.Supp. 380, 400 (E.D.Tenn.1989). As delicate as the task may be, this court would be derelict if it approved any remedial mechanism that did not completely cure the violation of the Act.

■ Second, district courts must be mindful that electoral systems are fundamentally a legislative responsibility; governmental bodies should be afforded a reasonable opportunity to produce a statutorily permissible plan. Jones v. City of Lubbock, 727 F.2d 364, 386 (5th Cir.1984), reh'g. denied, 730 F.2d 233 (5th Cir.1984); see also, Gingles v.

*Edmisten,* 590 F.Supp. 345, 376 (E.D.N.C. 1984), citing *White v. Weiser,* 412 U.S. 783, 795, 93 S.Ct. 2348, 2354, 37 L.Ed.2d 335 (1973). Here, the defendants have been given an opportunity to propose a permissible plan, both in writing and orally. The court has been more than willing to defer to legislative judgment in this area. Unfortunately, the defendants' response has been somewhat oblique. Primarily, they have protested that any change in the existing system is inappropriate, since they do not agree that a violation of the Act has been proven. Reluctantly, as an alternative, they have pointed to—. but not proposed—a reduction of the existing at-large seats from eight to six, on the ground that this (in their eyes) represents the least change possible. Such a minimal modification would do almost nothing to remedy the existing system's defects, let alone completely cure them. It cannot therefore be adopted. Nevertheless, this court has attempted to defer to the defendants' suggestions in other ways. Thus, for example, defendants have particularly requested that the ultimate Council contain an odd number of members. The court's remedy accommodates this request. The remedy, moreover, will not require any alteration of the existing ward structure. By employing an existing electoral scheme the remedy minimizes logistical disruption to the City.

Third, relevant to all phases of analysis is Congress' instruction that "nothing in [the Act] establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." 42 U.S.C. § 1973(b). Thus, while proportionality may be one factor to be considered, a "complete and full" remedy does not require re-configuring the system to maximize minority participation in government. *See generally, Johnson v. De Grandy,* — U.S. —, — — —, 114 S.Ct. 2647, 2656–61, 129 L.Ed.2d 775 (1994). The remedy therefore has not been crafted with an eye to proportionality as either an absolute floor or ceiling for Hispanic voter participation.

Fourth, in accordance with *Thornburg v. Gingles,* 478 U.S. 30, 46, 106 S.Ct. 2752, 2764, 92 L.Ed.2d 25 (1986), this court rejects "any

notion that at-large seats are always illegal under the Voting Rights Act." *Baird v. Indianapolis,* 976 F.2d 357, 362 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993). The court's decision on the merits has explicitly followed this principle, ruling that the School Committee's configuration of seven ward seats and two at-large seats does not violate the Act.

Finally, the Supreme Court has advised courts handling voting rights cases to consider a "benchmark" as a standard against which an allegedly unfair system may be compared. *Holder v. Hall,* — U.S. —, —, 114 S.Ct. 2581, 2585, 129 L.Ed.2d 687 (1994). In adopting the School Committee election system as one remedy among many possible remedies, the court has attempted to follow this advice, with the goal of paying respect to the City's existing institutions and impinging as little as possible on the City's legislative prerogatives.

### III. *DISCUSSION*

In 1992, the City of Holyoke adopted a redistricting plan that redrew its election wards to reflect the changed demographics (both population size and ethnic composition) in order to comply with the Constitution's one person—one vote requirement and the Voting Rights Act. Consequently, here, unlike most vote dilution cases, it is unnecessary for the court to reapportion current voting wards to construct an electoral mechanism that complies with the Voting Rights Act. Plaintiffs and defendants agree that the seven wards into which the City is currently parceled afford an adequate opportunity for Hispanics to elect candidates of their choice.

It is the majority of eight at-large City Council seats that, in combination with the seven districts, produces an electoral structure that unfairly dilutes the voting strength of Hispanics. The School Committee election system provides a benchmark that respects both minority electoral rights and the City's longstanding preference for some at-large representation on its elected bodies.[1]

---

**1.** The court has considered permitting three at-   large seats, to parallel the Mayor's role on the

Structuring the City Council election system in the same manner as the School Committee has several advantages.

First, it permits the City immediately to put in place a familiar, proven electoral structure. The remedy selected is not an "exotic" or untried electoral mechanism—requiring for example cumulative voting or limiting the number of ballots a voter may cast to less than the number of seats to be elected. As tailored, the remedy will minimize adjustment time and awkwardness to the degree possible.

Second, as noted, the change represents the least intrusive approach. As Justice Souter pointed out, even the staunchest supporters of majority-minority districts recognize that "as remedial devices, they rely on a quintessentially race-conscious calculus aptly described as the 'politics of second best.'" *Johnson v. De Grandy*, —— U.S. at ——, 114 S.Ct. at 2661, citing B. Grofman, L. Handley & R. Neimi, *Minority Representation and the Quest for Voting Equality*, 136 (1992). Courts must always be reluctant to tinker with the clockwork of democracy. Here, on the one hand, the reduction of the at-large seats from eight, to six or four, would not be sufficient to remedy the violation. On the other hand, total elimination of the at-large seats, as plaintiffs urge, would show insufficient respect for the City's interest in preserving a significant at-large component in its election system. *See Cousin v. McWherter*, 46 F.3d 568 (6th Cir.1995). The remedy chosen still permits a minority of the ward representatives to form a coalition with the at-large representatives and block legislation that may serve the narrow interests of a few wards, but not the City as a whole. By retaining a significant at-large component to the City Council, Holyoke's diverse electorate will still have an incentive to "pull, haul and trade to find common political ground." *Johnson v. De Grandy*, —— U.S. at ——, 114 S.Ct. at 2661.

Third, to the extent that it is a factor to be considered, the remedy chosen provides both Hispanics and non-Hispanics with rough proportionality in their voting influence.

This decision is not intended to suggest that a City Council electoral structure must always mirror the structure of the School Committee, or any other political body. Within the limits of the Voting Rights Act, differences are of course permissible, and good reasons may be imagined for different approaches. As a benchmark, however, the Holyoke School Committee's structure provides an effective remedy that is respectful of the City's existing preferences.

It is notable that the remedy creates a Council structure that is similar to systems used in neighboring towns. Northampton, for example, elects its council from seven wards and two at-large seats, and nearby Chicopee from nine wards and four at-large seats. While other towns and cities have made different choices, the remedy selected cannot be described as unprecedented or outlandish.

This ruling is made with knowledge of the City's 1961 referendum, which put the current 15-seat system in place beginning in 1963.[2] Certainly, good theoretical arguments can be made for any at-large or majority at-large system. Some cities or towns may choose such a system, others may not, providing the system does not fly in the face of Congress' intent in passing the Voting Rights Act. But thirty-four years ago the Voting Rights Act did not exist; Hispanics in Ho-

---

School Committee, but has rejected this option out of consideration for the defendants' strong plea that the council have an odd number of members. Counsel for the defendants was invited at oral argument to express a preference for three, rather than two, at-large seats but declined to do so. Similarly, the court has considered remedies that would provide roughly the same number of Council seats, for example by doubling the number of seats per ward, to create (with the two at-large seats) a Council of sixteen members compared to the current fifteen. Since the defendants have not requested a remedy providing a Council of roughly the same size, and because doubling the district seats would constitute a more dramatic intrusion into the process, the court has chosen the more conservative approach of using the existing School Committee system.

2. The details of the 1961 referendum were not brought to this court's attention at trial in the liability phase. The newspaper articles on the subject now submitted by defendants are not admissible and have not been considered.

lyoke comprised a tiny fraction of their population at the present time. Today's decision has been anchored, as it must be, on today's reality and today's law.

## IV. *CONCLUSION*

For the foregoing reasons the defendants are hereby permanently enjoined from conducting elections to the City Council under the current election system. Future elections will be conducted from the seven existing wards, with two additional seats to be elected at-large.